**FILED**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**07/02/15**

**CECILE FOY GSANGER, CLERK**
**BY** cholloway

ACCEPTED
13-15-00150-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/2/2015 10:52:24 AM
CECILE FOY GSANGER
CLERK

## NO. 13-15-00150-CV

### IN THE COURT OF APPEALS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/2/2015 10:52:24 AM
CECILE FOY GSANGER
Clerk

### THIRTEENTH DISTRICT OF TEXAS

### CORPUS CHRISTI - EDINBURG

---

**TRACIE MARIE SCHEFFLER F/K/A**
**TRACIE MARIE PARSON,**                    **APPELLANT,**

**v.**

**PAUL MICHAEL PARSON,**                    **APPELLEE.**

---

On Appeal From the 81st Judicial
District Court of Wilson County, Texas,
Trial Court Cause No. 10-10-0579-CVW

---

### APPELLANT'S BRIEF

_____

Kirk Dockery, Attorney in Charge
State Bar No. 05929220
Email: kirkdockery@gmail.com
Scott R. Donaho
State Bar No. 05967755
Email: srdonaho@floresville.net
The Law Offices of
DONAHO & DOCKERY, P.C.
P.O. Box 459
Floresville, Texas 78114
Tel:  830-393-2700
Fax: 830-393-3029

**ATTORNEYS FOR**
**TRACIE MARIE SCHEFLLER**

## IDENTITY OF PARTIES AND COUNSEL

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case and were parties to the trial court's order in this matter. These representations are made so the Judges of this Court may evaluate possible disqualification or recusal.

APPELLANT:  Tracie Marie Scheffler, referred to as "Scheffler" or "wife"

Counsel for Appellant are:

> The Law Offices of
> DONAHO & DOCKERY, P.C.
> Kirk Dockery
> Email:  kirkdockery@gmail.com
> State Bar No. 05929220
> Scott R. Donaho
> Email: srdonaho@floresville.net
> State Bar No. 05967755
> P.O. Box 459
> Floresville, Texas  78114
> Telephone: 830-393-2700
> Fax: 830-393-3029

APPELLEE:   Paul Michael Parson

Counsel for Appellee are:

> DIAZ JAKOB, LLC
> Jason J. Jakob
> State Bar No. 29042933
> Email: jjakob@diazjakob.com
> The Historic Milam Building
> 115 E. Travis Street, Suite 333
> San Antonio, Texas 78205
> Tel.: (210)226-4500
> Fax: (210)226-4502

# TABLE OF CONTENTS

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . vi

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

APPELLANT'S BRIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Jurisdiction: Clarification or Modification?. . . . . . . . . . . . . . . . . . . . . . . 6
    The DRO. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Calculation of Retirement Pay. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# INDEX OF AUTHORITIES

**Cases**

*Allen v. Allen*, 717 S.W.2d 311 (Tex. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Baxter V. Ruddle*, 794 S.W.2d 76 (Tex. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Berry v. Berry*, 647 S.W.2d 945 (Tex.1983). . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 10

*Beshears v. Beshears*, 423 S.W.3d 493 (Tex.App. Dallas, 2014). . . . . . . . . . . . . 17

*Coker v. Coker, 650 S.W.2d 391 (Tex. 1983)*. . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Douglas v. Douglas*, 454 S.W.3d 591, 595 (Tex.App. El Paso, 2014).. . . . . . . . . . 7

*Gainous v. Gainous*, 219 S.W.3d 97 (Tex.App. Houston [1 Dist.], 2006).. . . . . . 17

*Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550 (Tex.App.-San Antonio 2002, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re R.F.G.*, 282 S.W.3d 722 (Tex.App.-Dallas 2009, no pet.). . . . . . . . . . . . . 8, 16

*Joyner v. Joyner*, 352 S.W.3d 746 (Tex.App. San Antonio, 2011). . . . . . . . . . . . . 7

*National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517 (Tex.,1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Quijano v. Quijano*, 347 S.W.3d 345 (Tex.App.-Houston [14th Dist.] 2011, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shanks v. Treadway*, 110 S.W.3d 444 (Tex. 2003).. . . . . . . . . . . . . . . . . . . . . . . 17

*Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977). . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990) . . . . . . . . . . . . . . . . . . . . 7

**State Statutes**

*Tex.Fam.Code Ann*. 9.002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tex.Fam.Code Ann*. 9.006(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Tex.Fam.Code Ann*. 9.008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Federal Statutes**

29 U.S.C. § 1056(d)(3)(B)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant believes that the errors in this case are evident from the documents contained in the clerks record, and the appendix of this brief, and the issues presented by this brief, and that oral argument would do little to aid the court in determination of those issues.

# ISSUES PRESENTED

## First Point of Error

The trial court erred in granting appellee's motion to dismiss for lack of jurisdiction.

## Second Point of Error

The trial court abused its discretion in granting appellee's motion to dismiss for lack of jurisdiction.

## Third Point of Error

The trial court abused its discretion in failing to grant the relief requested by Appellant to clarify the valuation of the military retirement in the decree of divorce and the domestic relations order.

# NO. 13-15-00150-CV

## IN THE COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**TRACIE MARIE SCHEFFLER F/K/A
TRACIE MARIE PARSON,**                                                **APPELLANT,**

v.

**PAUL MICHAEL PARSON,**                                                **APPELLEE.**

---

On Appeal From the 81st Judicial
District Court of Wilson County, Texas,
Trial Court Cause No. 10-10-0579-CVW

---

## APPELLANT'S BRIEF

TO THE HONORABLE THIRTEENTH COURT OF APPEALS:

Tracie Marie Scheffler, herein after sometimes referred to as Scheffler, Appellant, "wife," or "former wife," presents this brief in support of her request that this Court reverse the order of the trial court dismissing the petition to clarify the division of military retirement in the DRO for lack of jurisdiction.

## STATEMENT OF THE CASE

This appeal lies from the trial court's entering an order dismissing the former

1

wife's petition to clarify the military retirement DRO for lack of jurisdiction.

Appellant raises three points of error. First, the trial court erred in granting appellee's motion to dismiss for lack of jurisdiction.

Second, that the trial court abused its discretion in granting appellee's motion to dismiss for lack of jurisdiction.

Third, that the trial court abused its discretion in failing to grant the relief requested by Appellant to correct the valuation of the military retirement in the decree of divorce and the domestic relations order.


## STATEMENT OF FACTS

Appellant, Tracie Marie Scheffler, then known as Tracie Marie Parson, filed suit for divorce in the 81st Judicial District Court of Wilson County, Texas, in October 2010.

Appellee, Paul Michael Parson, herein after sometimes referred to as Appellee, "husband," or "former husband," was a member of the United States Armed Services prior to the marriage and continued to be a servicemember after the divorce, and therefore a portion of his military retirement was his separate property.

On February 3, 2011, the parties and their respective counsel or record met for a settlement conference at the conclusion of which both parties and counsel signed a rule 11 agreement which provided, in relevant part:

"5.     Wife awarded:

. . . . .

"h.     ½ community interest in military retirement.

. . . .

"6.     Husband awarded:

. . . .

"c.     ½ community interest in military retirement + all H's SP interest." (CR 92,93) (APP 1)

On May 24, 2011, the trial court entered a "Corrected Final Decree of Divorce" which provided that wife was to receive a portion of husband's military retirement. Mr. Parson was at that time an active duty member of the armed services. Regarding military retirement, the decree awarded husband the following:

"H-4.     All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to TRACIE MARIE PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference." [emphasis added] (CR 71) (APP 2)

The decree also awarded wife the following:

"W-6. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference."

3

[emphasis added] (CR 73) (APP 2)

This section is perhaps inartfully drafted in that it awards wife "all" of husband's military retirement except that portion awarded to husband as specified in the DRO. However, the DRO does not award the husband any portion of the military retirement, as it only awards the former spouse a portion thereof. A strict reading of these sections would result in the former husband receiving none of his own retirement. This demonstrates some need for clarification.

Also on May 24, 2011, the trial court entered a "Domestic Relations Order - Military Retirement" awarding wife a portion of husband's military retirement which provides as follows:

> "IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly disposable retired pay at retirement." [emphasis added] (CR 80) (APP 3)

From the formula as stated in the DRO it is impossible for anyone to determine what numbers were used for the numerator and the denominator of the fraction in order to arrive at the "16.66 percent." The same is also true for the formula used to calculate the "35.0 percent." Only by using the correct numbers, which are known from the facts of the case, and which are correctly stated in the DRO, can we

4

determine that the wrong values have been used to for the valuation of the military retirement in this DRO.

Former husband retired from the military on October 31, 2014. Based on former husband's retirement statement, former wife determined that her share of the military retirement under the standard formula provided in *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983), should be approximately $282.00 per month. However, when the formula stated in the DRO was applied, the resulting figure is merely $92.00 per month. Only then did the former wife discover that the DRO gives former husband a windfall of approximately $190.00 per month for the remainder of his life. (CR 86) (APP 4)

On January 6, 2015, former wife filed her "Motion to Correct or Amend Domestic Relations Order for Military Retirement" requesting clarification of the formula used in the DRO. (CR 85) (APP 4)

At a hearing on that motion on February 9, 2015, the former wife presented her motion for clarification to the trial court. At that time the former husband presented his motion to dismiss the former wife's motion because it would be an impermissible modification of the divorce decree, and therefore the trial court lacked jurisdiction to consider the motion. The trial court took both motions under advisement. On February 13, 2015, the trial court entered its order dismissing the former wife's motion for lack of jurisdiction.

## ISSUES PRESENTED

### First Point of Error

**The trial court erred in granting appellee's motion to dismiss for lack of jurisdiction.**

### Second Point of Error

**The trial court abused its discretion in granting appellee's motion to dismiss for lack of jurisdiction.**

### Third Point of Error

**The trial court abused its discretion in failing to grant the relief requested by Appellant to clarify the valuation of the military retirement in the decree of divorce and the domestic relations order.**

## ARGUMENT AND AUTHORITY

<u>Jurisdiction: Clarification or Modification?</u>

By granting the motion to dismiss for lack of jurisdiction the Appellant's motion to clarify the military retirement, the trial court failed to recognize the subtle difference between a modification and a clarification of military retirement. (CR148) (APP 5) Appellee, the former husband, asserts that the former wife is seeking to *modify* the *apportionment* of the community estate's share of the military retirement.

However, the former wife is instead seeking to *clarify* the *valuation* of the community estate's share of the military retirement. (CR 103) (APP 6) Both parties should be entitled to reasonable certainty that the community portion of the military retirement has been valued correctly.

A trial court's ruling on a post-divorce motion for clarification of a divorce decree is reviewed for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Douglas v. Douglas*, 454 S.W.3d 591, 595 (Tex.App. El Paso, 2014). A trial court abuses its discretion when it acts arbitrarily or unreasonable or without reference to any guiding rules or principles. Id.

The trial court's dismissal for lack of jurisdiction is a question of law that the court of appeal should review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex.2002); *Guevara v. H.E. Butt Grocery Co.*, 82 S.W.3d 550, 551 (Tex.App.-San Antonio 2002, pet. denied); *Joyner v. Joyner*, 352 S.W.3d 746, 749 (Tex.App. San Antonio, 2011). The issue of jurisdiction in this case turns on whether the Appellant sought to "clarify" or to "modify" the DRO. Appellant asserts that the DRO is ambiguous because, although there was an attempt to use the formula set forth in *Berry*, the DRO failed to use the correct values for the valuation, and the DRO reduced the *Berry* formula calculations to percentages without showing the actual numbers used to performs those calculations. In other words, the DRO failed to show the full math used for the valuation. Without showing those numbers,

and thus without making the valuation capable being verified, the parties can only guess at what numbers were actually used in the formula.

Furthermore, any attempt to replicate the valuation set forth in the DRO using all of the values, which are now known, results in a valuation of the community portion that is far greater than that provided in the DRO. Consequently, the share awarded to the former wife by the DRO is about one-third of the correct amount.

The DRO in this case is a part of the agreement between husband and wife upon divorce. (CR 85) (APP 1) An agreed property division, although incorporated into a final divorce decree, is treated as a contract and is controlled by the rules of construction applicable to ordinary contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986); *In re R.F.G.*, 282 S.W.3d 722, 725 (Tex.App.-Dallas 2009, no pet.). A latent ambiguity can arise when a contract appears unambiguous on its face, but when applied to the subject matter with which it deals an ambiguity appears. *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex.,1995). Such is the manner in which this ambiguity was discovered. It was not until the final variable was known, that being former husband's disposable retired pay, that former wife could perform the final calculation and determine that an error had been made.

The primary problem in this case is the failure to correctly utilize the formula prescribed in *Berry v. Berry*. All variants of that formula indicated that all original

values, that is, the numerators and denominators, etc., of the necessary calculations be shown. Then let the DFAS perform its function and calculate the former spouses share of the disposable retired pay. The DRO in this case takes the unusual step of purporting to perform the calculations of the second and third variables down to percentages, which had the effect of masking the fact that the incorrect numbers had been used. The results of those calculations in the DRO cannot be replicated by using the known number, which are elsewhere stated correctly in the same DRO. We will never know where the error was made, but the fact that an error has been made is easily demonstrated.

In any valuation of the community share of military retirement the relevant numbers are easily determined from existing facts. In this case, either the wrong numbers were used in the formula, or there has been mathematical error. Either way, the result is a miscalculation of the community share of the military retirement.

It is easily understood that military retirement benefits earned during marriage are community property. But for many years the courts struggled with valuing the community property interest when the servicemember was still on active duty at the time of divorce, or when the servicemember joined the military prior to marriage. The formula in *Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex.1977), was created to address the issue of apportionment of the community share. The *Taggart* formula provides a fraction, the numerator of which is the number of months the

servicemember served during marriage and the denominator of which is the total number of months the servicemember has served in the military at the time of divorce. Case law stated the formula as follows:

$$50\% \quad \times \quad \frac{\text{months of service during marriage}}{\text{total months of service}} \quad \times \quad \text{servicemember's retirement benefit}$$

The first variable, fifty percent, indicates that the trial court intends to divide the community portion equally between the parties. The division may be disproportionate based on the circumstances presented.

The Taggart formula was problematic in that it did not recognize that post-divorce military service belonged to the servicemember spouse's separate estate.

That changed six years later with *Berry v. Berry*, and since then Texas law has clearly mandated that the community estate's interest in military retirement be valued as of the date of divorce, and that it include a method for determining what portion of post-marital service belongs to the member's separate estate. The method used is to provide that the percentage awarded to the former spouse shall be multiplied by the benefit earned at the grade and time in service that exists as of the date of divorce, plus an equal percentage of cost of living increases, if, as, and when received. The formula therefore changed to:

$$50\% \quad X \quad \frac{\text{months of service during marriage}}{\text{total months of service}} \quad X \quad \begin{array}{l}\text{servicemember's} \\ \text{retirement benefit} \\ \text{as earned by rank} \\ \text{at time of divorce}\end{array}$$

With this formula the valuation becomes a matter of plugging in the known values as of the date of divorce.

The 2010 version of the Texas Family Law Practice Manual states the formula in the form for a military retirement DRO as follows:

"IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [branch of service], the amount of disposable retired pay calculated as follows:

[_____] percent   **[percentage awarded former spouse]**

    X          multiplied by

[_____]        **[number of months of servicemember's service during marriage]**

    ÷          divided by

[_____]        **[number of months servicemember has been on active duty on date of divorce]** percent

    X          multiplied by

[_____] percent   **[0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12[1]]** percent

    X          multiplied by

[_____]        **[servicemember's high-36 month base pay on**

---

[1] The Defense Finance and Accounting Service has provided this formula post *Berry* to more easily allow for this calculation in that servicemembers accrue retirement benefits at the rate of 2.50% per month multiplied by their highest 36-month base pay.

divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly disposable retired pay at retirement."

The final variables in the formula, that is, the amount of "Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly disposable retired pay at retirement" cannot be known until after the servicemember has actually retired. Therefore, if the servicemember spouse is still active duty the actual value of the former spouse's portion of the military retirement cannot be accurately calculated until the actual retirement occurs.

Upon retirement of the servicemember it should then be a simple procedure to calculate the amount of the former spouse's share of the military retirement using the same formula, all of the previously known values, together with the final variable, which is the disposable retired pay.

In this case, as of the date of divorce, each of the following facts was known, and these facts are actually stated in the DRO:

a.  The parties were married on June 5, 2004. (CR 41) (APP 3)

b.  The parties were divorced on February 3, 2011. (CR 41) (APP 3)

c.  During the marriage Respondent served 6 years and 8 months (80 total months) of creditable service towards military retirement. (CR 41) (APP 3)

d.  As of the date of divorce Respondent had served 18 years and 2 months

(218 total months) of creditable service towards military retirement.

(CR 41) (APP 3)

e.  Respondent's high-36 month base pay on date of divorce was $3,322.16.

(CR 41) (APP 3)

Since Respondent's retirement on October 31, 2014, the following facts are known:

a.  Respondent's monthly gross retired pay at retirement is $2,341.00. (CR 90) (APP 4) [A

b.  Respondent's monthly disposable retired pay at retirement is $2,243.14. (CR 90) (APP 4)

The DRO

The DRO entered in this case stated:

> *"Award to Former Spouse*
> "IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows **50.0 percent** multiplied by **16.66 percent** multiplied by **35.0 percent** multiplied by the high-36 month base pay of the Servicemember, which is **$3,322.16**, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is **18 years 3 months**, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement."    (CR 80) (APP 3)

The DRO in this case fails to state the numbers used to obtain the second percentage, that is, it fails to state the numerator and the denominator used to calculate the "16.66

13

percent." The DRO also fails to state the variable used to calculate the third value, that is, it fails to state the multiplier used to calculate the "35.0 percent." How those numbers were calculated we may never know, but Appellant can demonstrate that the calculation is simply not correct. Thus, the valuation of the community share of the military retirement benefit was not performed correctly.

Calculation of Retirement Pay

Using the known values from this case, the former wife's share of military retirement should be calculated as follows:

| | |
|---|---|
| 50.0% | [percentage awarded former spouse] |
| X | multiplied by |
| 80 | [number of months of servicemember's service during marriage] |
| X | multiplied by |
| 218 | [number of months servicemember has been on active duty on date of divorce] percent |
| X | multiplied by |
| (0.025 x 218 / 12)% | [percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12] percent |
| X | multiplied by |
| $3,322.16 | [servicemember's high-36 month base pay on date of divorce] |
| ÷ | divided by |
| $2341.00 | Servicemember's monthly gross retired pay at retirement |
| X | multiplied by |
| $2,243.14 | Servicemember's monthly disposable retired pay at retirement." |

All calculations are performed as follows:

0.5 x <u>0.36697</u> x <u>0.45416</u> x $3,322.16 ÷ $2,341.00 x $2,243.14 = $288.92

Stated another way:

50% x <u>36.697%</u> x <u>45.416%</u> x $3,322.16 ÷ $2,341.00 x $2,243.14 = $288.92

The underlined numbers in each verison shows where the incorrect numbers have been corrected. This demonstrates how the standard formula provided in *Berry* should have been used in this case. The DRO actually contains all of the correct information, that is, the beginning values, that are to be used in the stated formula. But for some unknown reason, the DRO fails to use those correct values in the valuation of the military retirement. And for that reason the DRO is ambiguous.

The DRO provides, "50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months . . ." Importantly, we can determine the intent of the parties and the court from the first number stated, that being the percentage of the community estate's portion of the military retirement awarded to the wife. The DRO clearly states "50.0 percent." This amount coincides with the rule 11 agreement signed by the parties prior to the entry of the final decree.

From the formula we also know that the second value, stated as "16.66 percent," should be the product of a fraction, the numerator of which is the "number of months of servicemember's service during marriage," which the DRO states is 80,

and the denominator of which is the "number of months servicemember has been on active duty on date of divorce," which the DRO states is 218. However, 80 divided by 218 equals 36.697 percent. It does NOT equal 16.66 percent, the product of that calculation stated in the DRO. Consequently, that portion of the DRO is ambiguous.

From the formula we also know that the third value, stated as "35.0 percent," should be the product of a calculation, the first multiplier of which is 0.025, the second multiplier of which is the "number of months servicemember has been on active duty on date of divorce," which the DRO states is 218, which is then divided by 12. However, 0.025 multiplied by 218 and then divided by 12 equals 45.416 percent. It does NOT equal 35.0 percent, the production of that calculation stated in the DRO. Consequently, that portion of the DRO is also ambiguous.

Because the DRO gives all the correct information necessary to calculate the valuation of the military retirement properly, and then it utterly fails to calculate the valuation of the military retirement in the proper manner, the DRO is ambiguous. And thus clarification of the DRO is necessary so that the military retirement is correctly valued.

Furthermore, because the valuation of the military retirement by the DRO is ambiguous, then the trial court should have reviewed DRO in order to aid it in finding the intent of the parties. *Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983)*; *In re R.F.G.*, 282 S.W.3d at 725. Whether this DRO is ambiguous is a question of law this

court should review de novo. *Coker*, at 394; see also *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003). The purpose of the DRO is to create or recognize the former wife's rights, and to assign to the former wife the right to receive, her awarded portion of the military retirement. *Quijano v. Quijano*, 347 S.W.3d 345, 353â€"54 (Tex.App.-Houston [14th Dist.] 2011, no pet.); see also 29 U.S.C. § 1056(d)(3)(B)(i). Res judicata applies to final divorce decrees and, under the same logic, to DRO's. *Baxter V. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990). But Appellant's motion to clarify the QDRO should not be barred by res judicata if she can demonstrate, as she has, that a mistake has been made. *Gainous v. Gainous*, 219 S.W.3d 97, 105 (Tex.App. Houston [1 Dist.],2006). A trial court that renders a divorce decree and a DRO generally retains the power to clarify the property division made or approved in those documents. *Tex.Fam.Code* 9.002, 9.006(a), 9.008. The trial court had jurisdiction to enter an order clarifying the ambiguities in the DRO in order to give effect to the division of the property attempted therein, and had a duty to do so. Id. § 9.008(b). see also § 9.1045(a) (West 2006); *Beshears v. Beshears*, 423 S.W.3d 493, 500-01 (Tex.App. Dallas, 2014).

Appellant therefore requests that the order of the trial court dismissing the motion of Appellant to clarify the DRO for lack of jurisdiction be reversed. Appellant requests that the court find that the trial court abused its discretion in failing to grant the relief requested, and issue clarification of the DRO in which the figures stated

therein of 16.66 percent for the calculated value resulting from the number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce, be changed to the actual calculated value of 36.697 percent. $[80 \div 218 = 36.697\%]$. Appellant further requests that the court find that the trial court abused its discretion in failing to grant the relief requested, and issue clarification of the DRO in which the figure stated therein of 35.0 for the calculated value resulting from 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12, be changed to the actual calculated value is of 45.416 percent. $[0.025 \times 218 \div 12 = 45.416\%]$.

## PRAYER

Appellant prays that this Honorable Court reverse and remand the trial court's dismissal of the motion to clarify; that the requested clarification of the DRO be rendered by the court; and for such other and further relief as this Honorable Court deems fit to grant.

Respectfully submitted,

The Law Offices of
DONAHO & DOCKERY, P.C.
P.O. Box 459
Floresville, Texas 78114
Tel: 830-393-2700
Fax: 830-393-3029

/s/ Kirk Dockery

18

_____
Kirk Dockery, Attorney in Charge
State Bar No. 05929220
Email: kirkdockery@gmail.com
Scott R. Donaho
State Bar No. 05967755
Email: srdonaho@floresville.net

**CERTIFICATE OF SERVICE**

I certify that on July 1, 2015, a true and correct copy of the above and foregoing document was delivered to all counsel of record by the Electronic Filing Service Provider, as follows:

 /s/ Kirk Dockery
Kirk Dockery

DIAZ JAKOB, LLC                      BY ELECTRONIC SERVICE
Jason J. Jakob
State Bar No. 29042933
Email: jjakob@diazjakob.com
The Historic Milam Building
115 E. Travis Street, Suite 333
San Antonio, Texas 78205
Tel.: (210)226-4500
Fax: (210)226-4502

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitations of Tex. R. App. P. 9.4(i)(2)(B) because this brief consists of 4,089 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Kirk Dockery

_____

Kirk Dockery

10201B

20

# APPENDIX 1

PX-1  Parson  
Rule 11 Agreement

1. JMC rights per temp orders
2. SPO subject to:
   a. "military clause" - if Ⓗ misses weekend visit then 1st WE made up or 2nd WE & 3rd WE made up on 4th WE provide he gives 30 days notice. ~~if priority his weekend~~
   b. Thursdays - option of overnigh with 7days notice
   c. Summer - if Ⓗ needs daycare for more than 4 hours, he will allow Ⓦ to have children; parties will meet ½ for drop off and pick up.
   ~~d. parties share in dropoff/pickup of kids (meet ½ way or split)~~
3. Guideline C.S. - $1150 beginning March 1st (will pay ½ cs due for February directly to her).
4. Ⓗ provides health insurance - split uninsured costs 50/50
5. Wife awarded:
   a. 405 Carroll St, Potn Tx
   b. ½ profits from sale of land
   c. ½ TSP
   d. all her TRS
   e. tractor ✶
   f. Nissan Altima
   g. All property in her possession except red overstuffed ~~chair~~ to be given to Ⓗ w/in 30days.
   h. ½ community interest in military retirement
   i. 100% of bank accounts in her name
   j. 100% of loan accts joint

6. Husband awarded:
   a. 1/2 profits from sale of land
   b. 1/2 TSP
   c. 1/2 community interest in military retirement + SP interest          all H's
   d. Chevy Suburban, including debt pl
   e. All property in his possession ~~except~~, as well as red over stuffed chair in possession of (W) - must pick up w/in 30 days.
   f. 100% of bank accts in his name.

7. Wife pays
   a. all credit cards in her name (Citibank, BOA, Discovery)
   b. loan owed to mom
   c. tractor note
   d. note on 405 Carroll St. & all related costs
   e. all her living expenses or debt incurred since 10/2/10

8. Husband pays:
   a. all credit cards in his name ( NFCU )
   b. note on land until sold (min 3 mos)
   c. note on Suburban
   d. all his living expenses or debt incurred since 10/2/10
   e. $500 cash to Wife on or before 4/30/11.
   e. $1,000.00

8. tractor - if she does not want, then parties shall sell & (W) keeps profit.

Agreed:

_Tracie Parson_    _RP Parson_

9. on periods of possession for (H) — parties shall meet 1/2 way on the day the children are returned — exact location TBD. (H) responsible for picking up kids @ beginning of possession

_Dawn M. Canbaeh_
Attorney for Respondent

_Kirk Dockery_
Atty for Tracie Parson

# APPENDIX 2

IT IS ORDERED AND DECREED that the husband, PAUL MICHAEL PARSON, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.   One-half interest of the net proceeds from the sale of the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 18 Acres of land in Wilson County, Texas out of John H. Mills Survey No. 36, Abstract 221, being portion of that certain 60.4 acre tract described in conveyance in Volume 867, Page 108, Official Records of Wilson County, Texas, also known as 2496 CR 104, Floresville, Texas.

H-2.   The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment:

a.   Queen sleigh bed
b.   Ottoman
c.   Laptop with External Hard Drive
d.   52" HD TV
e.   Coin Collection
f.   Ping pong table
g.   Color printer
h.   ~~Dining table~~ *JP* *µ*
i.   End table
j.   Kegarator
k.   2 wine racks
l.   Corn hole game
m.   Light oak bedroom suit
n.   Sofa with hide-a-bed
o.   Glass and wood coffee table
p.   Ceramic tile table
q.   Antique parlor chairs
r.   Washer/dryer
s.   Microwave
t.   Book shelves (3)
u.   ~~Small engine wood chipper~~ *JP* *µ*
v.   A one-half of the Wine Collection
w.   Red overstuffed chair

H-3.   The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

a.   Navy Federal Credit Union,
     Account number XXXXX5700

H-4.   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as

*71*

a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to TRACIE MARIE PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference.

H-5.    All policies of life insurance (including cash values) insuring the husband's life.

H-6.    The 2003 Chevrolet Suburban motor vehicle, vehicle identification number 3GNFK16ZX3G345091, together with all prepaid insurance, keys, and title documents.

Property to Wife

IT IS ORDERED AND DECREED that the wife, TRACIE MARIE PARSON, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.    One-half interest of the net proceeds from the sale of the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 18 Acres of land in Wilson County, Texas out of John H. Mills Survey No. 36, Abstract 221, being portion of that certain 60.4 acre tract described in conveyance in Volume 867, Page 108, Official Records of Wilson County, Texas, also known as 2496 CR 104, Floresville, Texas.

W-2.    The following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> 0.37 acres of land within the city limits of Poth and out of the Luis Manchaca Grant, Abstract 18, Wilson County, Texas and being the land described in a conveyance to Geraldine L. Gorzell and Peggy S. Fiske of record in Volume 827, Page 480, Official Public Records of Wilson County, Texas and further being parts or portions of Lots 2, 3, 4 and 5, Block 11 as shown on the plat of record in Volume 136, Page 276 of the Deed Records of Wilson County, Texas also known as 405 N Carroll St., Poth, Texas.

W-3.    The following furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in her possession, including, but not limited to:

a.    3 Piece Sofa Set
b.    King Sleigh Bed and Bedroom Suite
c.    DVD Player/Recorder
d.    DVD player
e.    19" TV
f.    Brother printer
g.    Desktop computer
h.    E wave freezer
i.    Fridgidaire mini refrigerator
j.    Fiestaware dish set
k.    Black console table

*72*

l. Stainless steel pots and pans set
m. Washer/dryer
n. Card table and folding chairs
o. Fridgidaire refrigerator
p. ~~Large chair~~ 𝒶𝒫 |ᴷℓ
q. 6' Howse Shredder
r. Troy built mower
s. Remington 870 Shotgun
t. One-half of the Wine Collection

W-4. The funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions:

a. First National Bank
   Account number XXXXX-754
b. Navy Federal Credit Union
   Account number XXXXXX-6058
c. Navy Federal Credit Union
   Account number XXXX-000
d. Navy Federal Credit Union
   Account number 300916487

W-5. The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment with the Teacher Retirement System of Texas.

W-6. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of PAUL MICHAEL PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference.

W-7. All policies of life insurance (including cash values) insuring the wife's life.

W-8. The 2006 Nissan Altima motor vehicle, vehicle identification number IN4AL11D86N450449, together with all prepaid insurance, keys, and title documents.

W-9. The 2009 Mahindra Tractor motor vehicle, vehicle identification number SBCN176, together with all prepaid insurance, keys, and title documents.

W-10. $1,000.00 payable by PAUL MICHAEL PARSON to TRACIE MARIE PARSON on or before April 30, 2011, by cash, cashier's check, or money order.

Division of Debt

Debts to Husband

73

# APPENDIX 3

NO. <u>10-10-0579-CVW</u>

| | |
|---|---|
| IN THE MATTER OF<br>THE MARRIAGE OF | § IN THE DISTRICT COURT |
| | § |
| TRACIE MARIE PARSON<br>AND<br>PAUL MICHAEL PARSON | § 81ST JUDICIAL DISTRICT |
| | § |
| AND IN THE INTEREST OF<br>FALIN GALE PARSON AND ROGAN<br>DOW PARSON, CHILDREN | § WILSON COUNTY, TEXAS |

## DOMESTIC RELATIONS ORDER
[Military Retirement]

The Court, having entered a decree of divorce coincident with the signing of this domestic relations order, finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following findings and conclusions of law and enters them as an order in this proceeding.

*Findings*

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. Section 1408, as follows:

1. This Court has jurisdiction over PAUL MICHAEL PARSON. The residence of Servicemember is in Universal City, Bexar County, Texas, other than because of military assignment.

2. Servicemember, and TRACIE MARIE PARSON, ("Former Spouse"), were originally married on June 5, 2004, and that marriage lasted for 6 years and 8 months or more, during which time Servicemember served 6 years and 8 months or more of creditable service toward retirement.

3. Servicemember's Social Security number is 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, his address is 1950 Universal City Boulevard, Apt. #1102, Universal City, Texas 78148, and his birth date is July 30, 1972.

4. Former Spouse's Social Security number is 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 , her address is P.O. Box 1365, Poth, Texas, 78147, and her birth date is October 3, 1974.

5. The rights of Servicemember under the Servicemembers Civil Relief Act were fully complied with in this case.

6. Servicemember is not retired from the United States Navy at the time of this order.

7. The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

8. It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) designee make the payments due to Former Spouse of her interest in the disposable retired pay awarded in this order directly to Former Spouse.

143/547-552

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT

*Terms and Definitions*

With respect to the provisions of this DRO, the Court has used and applied the following terms and definitions:

1. "Retired pay" means monetary pay to which Servicemember is, or may hereafter be, entitled to receive on completion of the requisite number of years of creditable service to be entitled to nondisability retired pay as a result of service in the United States Armed Forces (active duty, reserve component, or national guard), whether called retired pay, retainer pay, or retirement pay.

2. "Disposable retired pay" has the meaning provided in the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*).

3. "USFSPA" means the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*) in effect on the date of the parties' divorce.

4. "Defense Finance and Accounting Service" (DFAS) means, refers to, and includes the Secretary of the Department of Defense, the Director of the DFAS, the designated agent of either of these, and other appropriate subdivisions of the United State Government.

5. "COLA" means the cost-of-living adjustment increases that are made annually to a military retiree's retired pay pursuant to 10 U.S.C. § 1401a.

*Award to Former Spouse*

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the calculated percentage of Servicemember's disposable retired pay at retirement, together with all COLAs applicable thereto, payable, IF, AS, and WHEN received by Servicemember.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the USFSPA and Servicemember shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

If DFAS is not allowed to pay Former Spouse the full amount of Former Spouse's entitlement

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT

pursuant to this order form any reason, Servicemember is hereby ORDERED, within seven days of being notified by Former Spouse that Former Spouse is not receiving the full amount of Former Spouse's interest in the retired pay, to execute and deliver to DFAS all forms or documents that may then be necessary to effect an allotment payable to Former Spouse in the amount of the difference between the amount being paid directly to Former Spouse by DFAS and the full amount of Former Spouse's interest in the retired pay. Servicemember is FURTHER ORDERED to keep and maintain in full force and effect any allotment required by this provision, payable to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, until such time as Former Spouse begins receiving Former Spouse's full separate-property share of Servicemember's disposable retired pay as awarded herein directly from DFAS. That allotment may be canceled by Servicemember if and when Former Spouse begins receiving, and for as long as Former Spouse is receiving, Former Spouses' full separate-property share of Servicemember's disposable retired pay directly from DFAS, but only in that event or to avoid double payment of sums.

Since Former Spouse has been awarded the right to receive that share attributable to the interest awarded to Former Spouse herein of any and all COLAs or other increases in the monthly disposable retired pay hereinafter paid and if Former Spouse is not receiving from DFAS his full share of the retired pay herein awarded to Former Spouse, if and when COLAs are made to the retired pay received by Servicemember, Servicemember is hereby ORDERED to execute and deliver to DFAS all forms or documents that may then be necessary to effect an increase in the allotment to Former Spouse in the amount equal to the dollars-and-cents equivalent of that COLA attributable to Former Spouse's share of that disposable retired pay. Servicemember is hereby ORDERED to increase the allotment then in effect or, if applicable, initiate an allotment pursuant to the foregoing paragraph, within seven working days of the date Servicemember is notified by DFAS of the effective date of each COLA to the monthly retired pay payment.

*Constructive Trust*

IT IS FURTHER ORDERED that Servicemember be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Servicemember be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Servicemember. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Servicemember is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, AND IT IS SO ORDERED. Servicemember is specifically directed that he is not relieved of that obligation except

to the extent that he is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Servicemember shall not reduce the amount equal to the percentage of the retired pay or the amount of the retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Servicemember shall not merge his military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Servicemember's retired pay as awarded in this order, unless otherwise ordered herein.

*Death*

IT IS ORDERED that the payment of the retired pay awarded in this order to Former Spouse shall continue until the death of Servicemember or Former Spouse.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Servicemember shall deliver by first class mail to Former Spouse at P.O. Box 1365, Poth, Texas, 78147, or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Servicemember from DFAS within five day of its receipt.

IT IS ORDERED that Servicemember hereby waives any privacy or other rights as may be required for Former Spouse to obtain information relating to Servicemember's date of retirement, last unit assignment, full pay grade, past or present monthly annuity payments, or other information that may be required to enforce this award or to revise this order to make it enforceable.

*Retirement*

IT IS ORDERED that Servicemember shall notify Former Spouse of his application for retired pay, and provide Former Spouse with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. This notification shall be mailed by Servicemember to Former Spouse at her last known address. Servicemember is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by him within five days of its receipt.

*Application for Direct Pay of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Servicemember's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-HGA-CL, Assistant General Counsel for Garnishment Operations, P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

<u>DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT</u>

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in her gross income for her taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Servicemember shall not include such benefits in Servicemember's gross income for such taxable years.

*Survivor Benefit Plan*

The Court further finds that Former Spouse and the parties' children should be designated as former spouse and child beneficiaries of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate Former Spouse and the parties' children as former spouse and child beneficiaries of the Survivor Benefit Plan and that the designation of Former Spouse and the children as former spouse and child beneficiaries should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during the children's eligibility or Former Spouse's lifetime, and IT IS SO ORDERED.

IT IS THEREFORE ORDERED that Servicemember shall elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan. IT IS FURTHER ORDERED that, pursuant to this order, Former Spouse be and is hereby deemed designated, to the extent permitted by law, a former spouse beneficiary of Servicemember's Survivor Benefit Plan to receive the percentage equal to the percentage of Servicemember's disposable retired pay awarded Former Spouse in this order.

To the extent that Servicemember fails or otherwise refuses to cooperate in filing the documents required to elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan, Former Spouse is directed to apply for Former Spouse's entitlement to be deemed a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan by notifying the DFAS Legal Department of this Court's deemed election pursuant to 10 U.S.C. Section 1447 et seq., completing a DD Form 2656-10 to effect the deemed election, and sending it, along with a certified copy of this order, to **U.S. Military Annuitant Pay, P.O. Box 7131, London, KY 40742-7131** by certified mail, return receipt requested. *Former Spouse's failure to register her deemed election within one year of the date this DRO is signed may, if not will, forever bar such an election for Former Spouse.*

IT IS ORDERED that Servicemember shall not during Former Spouse's lifetime modify, amend, withdraw, or in any other manner alter the election to name Former Spouse as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan.

*Continued Jurisdiction and Clarification*

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to Section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT

SIGNED on May 24, 2011.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

The Law Offices of
DONAHO & DOCKERY P.C.
P.O. Box 459
Floresville, TX 78114
Tel: (830) 393-2700
Fax: (830) 393-3029

By:_____
Kirk Dockery
State Bar No. 05929220
Attorney for Petitioner

LAUBACH LAW OFFICE
1005 S. Alamo
20770 Highway 281
Suite 108/Box 248
San Antonio, Texas 78258
Tel: (210) 222-1225
Fax: (830) 438-4064

By:_____
Dawn M. Laubach
State Bar No. 24031271
Attorney for Respondent

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
Tracie Marie Parson, Petitioner

_____
Paul Michael Parson, Respondent

Filed 24 Day of May 20 11

_____
Clerk District Court Wilson County Texas

10201-#10

DOMESTIC RELATIONS ORDER - MILITARY RETIREMENT

Page 6
84

# APPENDIX 4

## NO. 10-10-0579-CVW

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TRACIE MARIE PARSON | § | |
| AND | § | 81ST JUDICIAL DISTRICT |
| PAUL MICHAEL PARSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| F.G.P. AND R.D.P., CHILDREN | § | WILSON COUNTY, TEXAS |

### PETITION TO CORRECT OR AMEND
### DOMESTIC RELATIONS ORDER FOR MILITARY RETIREMENT

This Petition to Correct or Amend Domestic Relations Order for Military Retirement is brought by TRACIE MARIE SHEFFLER, formerly Tracie Marie Parson, Petitioner, who files this petition pursuant to §9.101 *et seq.*, Texas Family Code, and who shows in support:

1.      Petitioner, TRACIE MARIE SHEFFLER, formerly Tracie Marie Parson, was the Petitioner in the original suit for divorce.

2.      Respondent, PAUL MICHAEL PARSON, was the Respondent in the original suit for divorce.

3.      No personal service is necessary at this time. This petition is filed in the form of a counter-petition at a time when the Court has plenary power over the parties due to a petition to modify in suit affecting parent-child relationship filed by PAUL MICHAEL PARSON and a counter-petition to modify in suit affecting parent-child relationship filed by TRACIE MARIE SHEFFLER. Respondent, PAUL MICHAEL PARSON, will be served with this motion in accordance with Rule 21a, T.R.C.P., on his attorney of record.

4.      On May 24, 2011, this Court entered a "Corrected Final Decree of Divorce" which provides that Petitioner is to receive a portion of in Respondent's military retirement.

Filed ___ Day of ____ 15
_____ M
Deborah Bryan
Clerk District Court Wilson County, Texas
By_____ Deputy

5. Also on May 24, 2011, this Court entered a "Domestic Relations Order - Military Retirement" awarding Petitioner a portion of Respondent's military retirement.

6. Both the Corrected Final Decree of Divorce and the Domestic Relations Order - Military Retirement are based on a Rule 11 Agreement signed by both parties and their attorney of record, dated February 3, 2011, a copy of which is attached hereto, and which provides in relevant part:

> "5. Wife awarded:
>
> . . . . .
>
> h. ½ community interest in military retirement.
>
> . . . .
>
> 6. Husband awarded:
>
> . . . .
>
> c. ½ community interest in military retirement + all H's SP interest."

A true and correct copy of the Rule 11 Agreement is attached hereto, the original of which is in the possession of the Clerk of this Court.

7. At the time of the divorce, Respondent was still active duty in the U.S. Navy and therefore certain aspects of his retirement could not be known at that time, specifically, the total number of years and months that he would serve prior to retirement, the amount of his gross monthly retired pay, and the amount of his disposable monthly retired pay.

8. The formula used in the Domestic Relations Order, which was provided by Respondent's attorney of record, is as follows:

> "IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States Navy, the amount of disposable retired pay calculated as follows 50.0 percent multiplied by 16.66 percent multiplied by 35.0 percent multiplied by the high-36 month base pay of the

Servicemember, which is $3,322.16, with Servicemember's pay grade, which is E-6, and longevity on the date of divorce, which is 18 years 3 months, determined on the date of Servicemember's retirement divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly **disposable** retired pay at retirement."

This formula results in an award of less than $100.00 per month from Respondent's that is far less than the one-half of the community interest agreed upon by the parties.

9.      The proper formula suggested by the Defense Finance and Accounting Service for compliance with the Uniformed Services Former Spouses' Protection Act is:

"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying 50% times a fraction, the numerator of which is _____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service."

10.      State courts have authority to divide military retired pay only as set forth by the Uniformed Services Former Spouses' Protection Act. Thus, state court orders that are not in accordance with the USFSPA are unenforceable. The DRO for military retirement entered by the Court on May 24, 2011, fails to divide the military retired pay of Respondent in accordance with one of the prescribed formulas of the USFSPA and therefore it is unenforceable, and requires amendment or correction.

11.      Petitioner believes that in drafting the DRO, that Respondent's counsel was attempting to use the following suggested language from the Texas Family Law Practice Manual:

"IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [branch of service], the amount of disposable retired pay calculated as follows: [percentage awarded former spouse] percent multiplied by [percentage of

community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce] percent multiplied by [percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12] percent multiplied by [servicemember's high-36 month base pay on date of divorce] divided by Servicemember's monthly gross retired pay at retirement multiplied by Servicemember's monthly disposable retired pay at retirement."

Petitioner now comprehends that two of the values stated in the Domestic Relations Order were miscalculated.

Each of the following facts was known at the time of divorce:

a.      The parties were married on June 5, 2004.

b.      The parties were divorced on February 3, 2011.

c.      During the marriage Respondent served 6 years and 8 months (80 total months) of creditable service towards military retirement.

d.      As of the date of divorce Respondent had served 18 years and 2 months (218 total months) of creditable service towards military retirement.

e.      Respondent's high-36 month base pay on date of divorce was $3,322.16 .

Since Respondent's retirement on October 31, 2014, the following facts are known:

a.      Respondent's monthly gross retired pay at retirement is $2,341.00.

b.      Respondent's monthly disposable retired pay at retirement is $2,243.14.

12.     That the Domestic Relations Order entered by the Court on May 24, 2011, involves the miscalculation of Petitioner's share can be demonstrated as follows:

Application of formula as written in Domestic Relations Order:

|  |  |  |  |
|---|---|---|---|
|  |  | 0.5 | Percentage of Community Estate's share of military retirement awarded to wife |
| INCORRECT | x | 0.1666 | Number of months of servicemember's service during marriage divided by number of months servicemember has been on actl've duty on date of divorce (80 ÷ 218) |
| VALUE |  |  |  |
| INCORRECT | x | 0.35 | 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12 (0.025 x 218 ÷ 12) |
| VALUE |  |  |  |
|  | x | $3,322.16 | Servicemember's high-36 month base pay on date of divorce |
|  | ÷ | $2,341.00 | Servicemember's monthly gross retired pay at retirement |
|  | x | $2,243.14 | Servicemember's monthly disposable retired pay at retirement |
|  | = | $92.81 | Incorrect Value for Wife's Share of Military Retirement |

Application of formula as correctly applied to facts of this case:

|  |  |  |
|---|---|---|
|  | 0.5 | Percentage of Community Estate's share of military retirement awarded to wife |
| x | 0.36697 | Number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce (80 ÷ 218) |
| x | 0.45416 | 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12 (0.025 x 218 ÷ 12) |
| x | $3,322.16 | Servicemember's high-36 month base pay on date of divorce |
| ÷ | $2,341.00 | Servicemember's monthly gross retired pay at retirement |
| x | $2,243.14 | Servicemember's monthly disposable retired pay at retirement |
| = | $265.27 | Correct Value for Wife's Share of Military Retirement |

**ERROR 1:** The percentage that is stated in the DRO of 16.66 for the calculated value resulting from the number of months of servicemember's service during marriage divided by number of months servicemember has been on active duty on date of divorce, has been miscalculated, and the actual calculated value is 36.697 percent. [80 ÷ 218 = 36.697%]

**ERROR 2:** The percentage that is stated in the DRO of 35.0 for the calculated value of 0.025 multiplied by number of full months of servicemember's creditable service toward retirement on divorce divided by 12, has been miscalculated, and actual calculated value is 45.416 percent. [0.025 x 218 ÷ 12 = 45.416%]

The values used to determine or calculate these numbers were known at the time of divorce but were miscalculated by the attorney's in preparation of the DRO, which was an inadvertent and unintentional mistake.

13. Pursuant to Sec. 9.1045, Texas Family Code, this court retains continuing, exclusive jurisdiction to amend any previously entered domestic relations order to correct the order or clarify the terms of the order to effectuate the division of property ordered by the court. The DRO signed by the Court on May 24, 2011, fails to effectuate the division of property ordered by the Court pursuant to the Rule 11 Agreement signed by the parties and their attorneys of record, and therefore, this amendment or correction is made necessary. Attached is a proposed Corrected Domestic Relations Order for Military Retirement which will correctly effectuate the division of military retirement pursuant to the Rule 11 Agreement of the parties which was adopted by the Court and rendered as its order on February 3, 2011.

PRAYER

Petitioner, TRACIE MARIE SHEFFLER, prays that the Court grant this petition to amend or correct the Domestic Relations Order for Military Retirement, so that the share of Respondent's military retirement awarded to Petitioner is correctly calculated and stated in a manner that can be enforced

Respectfully submitted,

The Law Offices of
DONAHO & DOCKERY, P.C.
P.O. Box 459

Floresville, Texas 78114
Tel: 830-393-2700
Fax: 830-393-3029

_____
Kirk Dockery, Attorney in Charge
State Bar No. 05929220
Email: kirkdockery@gmail.com
Scott R. Donaho
State Bar No. 05967755
Email: srdonaho@floresville.net
Attorneys for Tracie Marie Sheffler

## Notice of Hearing

The above motion is set for hearing on January 14, 2015, at 9:00 a.m. in the District Courtroom of the Wilson County Justice Center, 800 10th Street, Floresville, Texas.

_____
Kirk Dockery

## Certificate of Service

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on January 6, 2015.

_____
Kirk Dockery

10201-#23.wpd

# APPENDIX 5

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| TRACIE MARIE PARSON | § | |
| AND | § | 81ST JUDICIAL DISTRICT |
| PAUL MICHAEL PARSON | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| FALIN GALE PARSON AND | § | |
| ROGAN DOW PARSON, | § | |
| CHILDREN | § | WILSON COUNTY, TEXAS |

## ORDER

PAUL MICHAEL PARSON'S *First Plea the Jurisdiction, and Motion to Dismiss and Special Exceptions*, filed January 13, 2015, in opposition to TRACIE MARIE (PARSON) SCHEFFLER'S *Petition to Correct or Amend Domestic Relations Order for Military Retirement*, filed January 8, 2015, is sustained. The *Petition to Correct or Amend Domestic Relations Order for Military Retirement*, is dismissed for lack of jurisdiction.

Signed February 13, 2015

*Russell Wilson*

Russell Wilson, District Judge
218th District Court

Filed _13_ Day of _Feb. 2015_
_4:02_ _P_ M
Deborah Bryan
Clerk District Court Wilson County, Texas
By_____ Deputy

158163l

148

**APPENDIX 6**

CAUSE NO. 10-10-0579-CVW

| | | |
|---|---|---|
| IN THE INTEREST OF | § | IN THE DISTRICT COURT |
| | § | |
| FALIN GALE PARSON AND | § | 81ST JUDICIAL DISTRICT |
| ROGAN DOW PARSON, | § | |
| | § | |
| MINOR CHILDREN | § | WILSON COUNTY, TEXAS |

## PETITIONER'S FIRST PLEA TO JURISDICTION AND MOTION TO DISMISS AND SPECIAL EXCEPTIONS

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PAUL MICHAEL PARSON ("Petitioner" herein) in the above-styled and numbered cause, and files this, his *Petitioner's First Plea to the Jurisdiction and Motion to Dismiss and Special Exceptions and Motion to Dismiss* and for such would respectfully show the Court as follows:

### FACTS

1. This suit to modify a prior order is brought by PAUL MICHAEL PARSON, Petitioner. The last three numbers of Petitioner's driver's license number are 960. The last three numbers of Petitioner's Social Security number are 940. Petitioner is the father of the children and has standing to bring this suit. The requested modification will be in the best interest of the children.

2. Respondent is TRACIE MARIE (PARSON) SHEFFLER.

3. The order to be modified is entitled Corrected Final Decree of Divorce and was rendered on March 1, 2011 but signed on May 24, 2011.

4. On or about January 6, 2015 Respondent, TRACIE MARIE (PARSON) SHEFFLER filed an Petition to Correct or Amend Domestic Relations Order for Military Retirement in

Page 1 of 9

*103*

district court claiming the following:

a) On February 3, 2011 the court heard this case and rendered a Final Decree of Divorce.

b) On or about May 24, 2011 an amended Final Decree and Divorce was entered before the court along with a Domestic Relations Order signed by the parties and the attorneys and by the court but made retroactively effective as March 1, 2011 but signed by the court on May 24, 2011. (See, attached incorporated herein by reference as "Exhibit A").

c) A Motion to Modify Parent-Child Relationship was filed by Petitioner on October 31, 2013 and Temporary Orders were entered on February 1, 2014. A Motion and Order granting mediation was November 18, 2014.

d) After an unsuccessful mediation Respondent filed a Petition to Correct or Amend Domestic Relations Order For Military Retirement.

3. According to the documents, the subject of this suit, set forth in the Corrected Final Decree of Divorce husband is awarded:

All sums, whether mature or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, proceeds therefrom, and any and any other rights related to or as a result of PAUL MICHEAL PARON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as result of PAUL MICHAEL PARSON'S past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to Tracie MARIE PARSON as more particularly specified

in the domestic relations order signed in conjunction with this decree and incorporated verbatim in it by reference. Corrected Final Decree of Divorce, H-4, Page 23

5. In the same Corrected Final Decree of Divorce wife is awarded as follows:

The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, any other rights related to or as a result of PAUL MICHAELS PARSON's service in the United States Navy, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of PAUL MICHAEL PARSON's past, present, or future employment, except that portion of PAUL MICHAEL PARSON's U.S. military retirement that has been awarded in this decree to PAUL MICHAEL PARSON as more particularly specified in the domestic relations order signed in conjunction with this decree and incorporated herein by reference. Corrected Final Decree of Divorce, W-6, Page 24.

6. The DRO was entered into by the parties and the attorneys. Respondent counsel drafted the DRO as well as the Final Decree of Divorce and had opportunity to review and perform said calculation. Petitioners counsel points out to the court that many hand written changes were made on behalf of the parties the parties entered into the agreement as noted by their signatures, both attorney's signature and that of the court. The Final Decree of Divorce incorporates language to which dispels of an ambiguity to the meaning of the document Respondent is attempting to incorporate a previous to the Final Decree of Divorce Rule 11

Agreement to interpret the meaning of the Rule 11 Agreement which is barred by the parole evidence rule. Furthermore, in accordance with Texas Family Code, chapter 9, titled, Limitation on Power of the Court to Enforce, section 007 states as follows:

(a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

(c) The power of the court to render further orders to assist in the implementation of or to clarify the property division is abated while an appellate proceeding is pending.

7. In Pearson v. Fillingim, The Texas Supreme Court held " *[T] he court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree. If a decree is ambiguous, that court can enter a clarification order. [But an unambiguous judgment finalizing a divorce and dividing marital property bar relitigation of the property division, even if the decree incorrectly characterizes or divides the property.*" See, Pearson v. Fillingim, 322 S.W.3d 361, 363 (Tex. 2011). Moreover, in a *Hagen v. Hagen*, the Texas Supreme Court holds *"In the case before us, the [couple's]*

Page 4 of 9

*106*

*original divorce decree did not award [W] amounts 'calculated on' [H's] gross or even total retirement pay before deductions... The [couples] decree plainly entitled [W] only to part of the Army or military retirement pay [H] received, if as, and when he received it. [S]uch military retirement pay did not include VA disability benefits [that H elected to receive post-divorce in lieu of retirement pay]. Thus the trail court...did not modify the [couples] decree; it only clarified the decree did not divide VA disability pay that was or might not become payable to [H] On the surface, it appears that [H's post-divorce election to receive VA benefits has worked an inequity on [W] . But the language used in divorce decrees is important, and we must presume the divorce court chose it carefully..." See,* Hagen v. Hagen, 282 S.W.3d 899, 907 (Tex. 2009). Here like in Hagen the language of the Correct Final Decree of Divorce is unambiguous and since it is corrected it is unambiguous the parties, counsel and the court chose it carefully. Therefore, it would be improper the court to re-divide the property *inconsistent with* the Corrected Decree of the Divorce which incorporate verbatim

WHEREFORE, Petitioner, PAUL MICHAEL PARSON would request that the court grant the plea to jurisdiction and to dismiss Respondents Petition to Correct Or Amend Domestic Relations Order for Military Retirement..

8. Petitioner specially except to Paragraph 6, Paragraph 9, Paragraph 10, Paragraph 11, Paragraph 12, and Paragraph 13 wherein the Respondent attempts to use a previous to Rule 11 Agreement to interpret the Corrected Final Decree of Divorce are based on a Rule 11 Agreement The DRO was entered into by the parties and the attorneys. Respondent

Page 5 of 9

*107*

counsel drafted the DRO as well as the Final Decree of Divorce and had opportunity to review and perform said calculation. Petitioners counsel points out to the court that many hand written changes were made on behalf of the parties the parties entered into the agreement as noted by their signatures, both attorney's signature and that of the court. The Final Decree of Divorce incorporates language to which dispels of an ambiguity to the meaning of the document   Respondent is attempting to incorporate a previous to the Final Decree of Divorce Rule 11 Agreement to interpret the meaning of the Rule 11 Agreement which is barred by the parole evidence rule. Furthermore, in accordance with Texas Family Code, chapter 9, titled, Limitation on Power of the Court to Enforce, section 007 states as follows:

(d) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(e) An order under this section that amends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

(f) The power of the court to render further orders to assist in the implementation of or to clarify the property division is abated while an appellate proceeding is pending.

*108*

9. In <u>Pearson v. Fillingim</u>, The Texas Supreme Court held " *[T] he court that renders a divorce decree retains jurisdiction to clarify and enforce the property division within that decree. If a decree is ambiguous, that court can enter a clarification order. [But an unambiguous judgment finalizing a divorce and dividing marital property bar relitigation of the property division, even if the decree incorrectly characterizes or divides the property.*" See, <u>Pearson v. Fillingim</u>, 322 S.W.3d 361, 363 (Tex. 2011). Moreover, in a <u>Hagen v. Hagen</u>, the Texas Supreme Court holds *"In the case before us, the [couple's] original divorce decree did not award [W] amounts 'calculated on' [H's] gross or even total retirement pay before deductions... The [couples] decree plainly entitled [W] only to part of the Army or military retirement pay [H] received, if as, and when he received it. [S]uch military retirement pay did not include VA disability benefits [that H elected to receive post-divorce in lieu of retirement pay]. Thus the trail court...did not modify the [couples] decree; it only clarified the decree did not divide VA disability pay that was or might not become payable to [H] On the surface, it appears that [H's post-divorce election to receive VA benefits has worked an inequity on [W] . But the language used in divorce decrees is important, and we must presume the divorce court chose it carefully..."* See, <u>Hagen v. Hagen</u>, 282 S.W.3d 899, 907 (Tex. 2009). Here like in Hagen the language of the Correct Final Decree of Divorce is unambiguous and since it is corrected it is unambiguous the parties, counsel and the court chose it carefully. Therefore, it would be improper the court to re-divide the property inconsistent with the Corrected Decree of the Divorce which incorporate verbatim.

WHEREFORE, Petitioner request that these special exceptions be set for hearing and

Page 7 of 9

*109*

that upon hearing the Court sustain the special exceptions, and Order Responden'

Amended her pleading and that it be pleaded with more specificity, and/or that the

pleading be stricken, after granting Respondent to amend, and for other and further

relief to which the Petitioner may show themselves justly entitled.

Respectfully Submitted,

DIAZ JAKOB, LLC
115 E. Travis St, Suite 333
San Antonio, TX 78205
Tel. (210)226-4500
Fax (210)226-4502

By: _____
JASON J. JAKOB
Texas Bar No. 24042933
EMAIL jjakob@diazjakob.com
ATTORNEY IN CHARGE
FOR DEFENDANTS

CERTIFICATE OF SERVICE

**CERTIFICATE OF SERVICE**

I do hereby certify that the foregoing document has been forwarded in accordance with the

Texas Rules of Civil Procedure to all counsel of record as set out below, on this the 13th day of

January 2015 to:

The Law Offices of
DONAHO & DOCKERY P.C.
Kirk Dockery, Esq.
P.O. Box 459

Page 8 of 9

110

Floresville, Texas 78114
Telephone: (830) 393-2700
Telecopier: (830) 393-3029

_____
JASON J. JAKOB, ESQ.

*111*

# APPENDIX 7

 

**Form 25-31**

*Caveat:* Although the military retirement division language may be included in the body of the decree of divorce, the better practice is to treat military retirement just as any other retirement asset that requires a qualified domestic relations order (QDRO) would be treated. Because a division order of military retirement does not fall under the Employee Retirement Income Security Act, it is not a "qualified" order but simply a domestic relations order (DRO). The Defense Finance and Accounting Service (DFAS) does not require that the order regarding division of the retirement benefits be contained wholly in the decree, and the better practice is to have a separate order that specifically treats the division of the military retired pay and related military benefits. DFAS may require, however, that the person submitting the retirement division order for approval for direct payment (usually the nonmember spouse, since an application signed by that spouse must accompany the order) to the nonmember spouse submit the divorce decree, as well as the DRO that divides the military retirement if it is in a separate order. However, if the DRO specifically states the date that the parties were divorced, DFAS can readily ascertain that the parties are or have previously been divorced, and submitting the decree may be unnecessary.

---

**[Caption. See § 3 of the Introduction in volume 1 of this manual.]**

## Domestic Relations Order
[Military Retirement]

The Court, having entered a decree of divorce [coincident with the signing of this domestic relations order/in this case on [**date**]], finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following specific findings and conclusions of law and enters them as an order in this proceeding.

Findings

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1408, as follows:

1. This Court has jurisdiction over [**full name of servicemember**] ("Servicemember"). [**Include one or both of the following:** The residence of Servicemember is in [**city, county**],

© STATE BAR OF TEXAS

Texas, other than because of military assignment./Servicemember has consented to the jurisdiction of the Court.]

2.      Servicemember and [**full name of former spouse**] ("Former Spouse") were originally married on [**date**], and that marriage lasted for [**number**] years and [**number**] months or more, during which time Servicemember served [**number**] years and [**number**] months or more of creditable service toward retirement.

> The time in months and years that the parties were married during which the servicemember was earning retirement credit should not be stated to be "ten years or more" or "twenty years or more" but should be the actual years and months of overlapping marital service. The ten-year and twenty-year periods are relevant in determining the availability of direct payment from DFAS to the former spouse and the former spouse's entitlement to certain medical and other benefits, respectively. See the practice notes at sections 25.75 and 25.80.

3.      Servicemember's Social Security number is ***-**-[**last four numbers**], [his/her] address is [**address**], and [his/her] birth date is [**date**].

4.      Former Spouse's Social Security number is ***-**-[**last four numbers**], [her/his] address is [**address**], and [her/his] birth date is [**date**].

5.      The rights of Servicemember under the Servicemembers Civil Relief Act were fully complied with in this case.

6.      Servicemember [is/is not] retired from the United States [**branch of service**] at the time of this order.

7.      The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

> Direct payment is available from DFAS only if the parties were married for at least ten years during which the servicemember was also on active duty for at least ten years or in active reserve status and earned at least ten "good years" for reserve retirement credit. If this is not the case, the order must be written to provide for a constructive trust between the servicemember and the former spouse, and taxes must be dealt with because the servicemember will be taxed.

8.    It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) make the payments due to Former Spouse of [her/his] interest in the disposable retired pay awarded in this order directly to Former Spouse.

*Terms and Definitions*

With respect to the provisions of this DRO, the Court has used and applied the following terms and definitions:

1.    "Retired pay" means monetary pay to which Servicemember is, or may hereafter be, entitled to receive on completion of the requisite number of years of creditable service to be entitled to nondisability retired pay as a result of service in the United States Armed Forces (active duty, reserve component, or national guard), whether called retired pay, retainer pay, or retirement pay.

2.    "Disposable retired pay" has the meaning provided in the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*).

3.    "USFSPA" means the Uniformed Services Former Spouses' Protection Act (10 U.S.C. § 1408 *et seq.*) in effect on the date of the parties' divorce.

4.    "Defense Finance and Accounting Service" (DFAS) means, refers to, and includes the Secretary of the Department of Defense, the Director of the DFAS, the designated agent of either of these, and other appropriate subdivisions of the United States Government.

5.   "COLA" means the cost-of-living adjustment increases that are made annually to a military retiree's retired pay pursuant to 10 U.S.C. § 1401a.

*Award to Former Spouse*

Select one of the following.

Use the following when the former spouse is to receive *only* a fixed-dollar award. The former spouse will not receive any COLAs thereafter authorized by Congress if a fixed dollar amount is awarded.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the sum of [**number**] dollars ($[**amount**]) of Servicemember's monthly *disposable* retired pay.

When representing the servicemember, use the following for an active duty servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12**] percent *multiplied by* [**servicemember's base pay on date of divorce**] *divided by* the amount of the monthly gross retired pay that Servicemember is entitled to receive at retirement *multiplied by* the amount of Servicemember's monthly *disposable* retired pay at retirement.

When representing a servicemember who has not been in the military for twenty years, calculate the percentage of the servicemember's entitlement to retired pay taking into account the provisions of the Temporary Early Retirement Authority (TERA), 10 U.S.C. § 1293, which will necessarily have the effect of reducing the former spouse's share of the anticipated retired pay on divorce. See James N. Higdon, Military Retirement and Divorce, chapter 63.2, page 13, State Bar of Texas 35th Advanced Family Law Course, August 2009, for a discussion of the application of TERA to the calculation of military retired pay in such circumstances.

Or

When representing the former spouse, use the following for an active duty servicemember who entered the service *before* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12**] percent *multiplied by* the base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly ***disposable*** retired pay at retirement.

© STATE BAR OF TEXAS

> When representing the former spouse, determine the former spouse's share of the retired pay on divorce as of the date of retirement rather than the date of divorce, limited, however, to the pay grade and longevity of the servicemember on the date of divorce. Otherwise the former spouse will not derive the benefit of the annual active duty COLAs (in accordance with *Berry v. Berry*, 647 S.W.2d 945 (Tex. 1983)) that are authorized by Congress. See James N. Higdon, Military Retirement and Divorce, chapter 63.2, State Bar of Texas 35th Advanced Family Law Course, August 2009, for a discussion of this issue in the calculation of military retired pay.

Or

> When representing the servicemember, use the following for an active duty servicemember who entered the service *on or after* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12**] percent *multiplied by* [**servicemember's high-36 month base pay on date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly ***disposable*** retired pay at retirement.

Or

> When representing the former spouse, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.
>
> Because the servicemember's high-36 month base pay at the time of retirement *for his or her pay grade and longevity on the date of divorce* cannot be determined on the date of divorce but must wait for his or her retirement, it will probably be necessary to "clarify" the DRO at or after the date the servicemember retires because DFAS may not accept for processing an order that contains the "high-36 month base pay at the time of retirement" hypothetical. Therefore, both parties should be notified that a clarification suit will probably have to be filed and a clarifying order entered at that time.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of months of servicemember's service during marriage *divided by* number of months servicemember has been on active duty on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* number of full months of servicemember's creditable service toward retirement on divorce *divided by* 12**] percent *multiplied by* the high-36 month base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly **disposable** retired pay at retirement.

> Or

> Use the following for an active duty servicemember who is retired at the time of divorce whether representing the servicemember or the former spouse.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay**

**entitlement, that is, number of months of servicemember's service during marriage *divided by* total number of months of servicemember's service at retirement**] percent *multiplied by* Servicemember's monthly ***disposable*** retired pay.

| Or |
| --- |

| When representing the servicemember, use the following for an active reservist servicemember who entered the service *before* September 8, 1980. |
| --- |

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage *divided by* total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* [**servicemember's base pay on date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied* by Servicemember's monthly ***disposable*** retired pay at retirement.

| Or |
| --- |

| When representing the former spouse, use the following for an active reservist servicemember who entered the service *before* September 8, 1980. |
| --- |

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of retired pay then equal to [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned**

during marriage *divided by* **total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* the base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly ***disposable*** retired pay at retirement.

Or

> When representing the servicemember, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage *divided by* total number of retirement points earned by servicemember on date of divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* [**servicemember's high-36 month base pay on the date of divorce**] *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly ***disposable*** retired pay at retirement.

Or

> When representing the former spouse, use the following for an active reservist servicemember who entered the service *on or after* September 8, 1980.
>
> Because the servicemember's high-36 month base pay at the time of retirement *for his or her pay grade and longevity on the date of divorce* cannot be determined on the date of divorce but must wait for his or her retirement, it will probably be necessary to "clarify" the DRO at or after the date the servicemember retires, because DFAS may not accept for processing an order that contains the "high-36 month base pay at the time of retirement" hypothetical. Therefore, both parties should be notified that a clarification suit will probably have to be filed and a clarifying order entered at that time.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember, on Servicemember's retirement from the United States [**branch of service**], the amount of disposable retired pay calculated as follows: [**percentage awarded former spouse**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of retirement points earned during marriage *divided by* total number of retirement points earned by servicemember at divorce**] percent *multiplied by* [**percentage of servicemember's gross retired pay entitlement if servicemember were allowed to retire on date of divorce, that is, 0.025 *multiplied by* servicemember's total retirement points on divorce *divided by* 360**] percent *multiplied by* the high-36 month base pay of a servicemember with Servicemember's pay grade and longevity on the date of divorce determined on the date of Servicemember's retirement *divided by* Servicemember's monthly gross retired pay at retirement *multiplied by* Servicemember's monthly *disposable* retired pay at retirement.

> Or

> Use the following for a reservist servicemember who is retired *and* receiving retired pay at the time of divorce whether representing the servicemember or the former spouse.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**number of servicemember's retirement points earned during marriage**

*divided by* **total number of servicemember's retirement points at retirement**] percent *multiplied by* Servicemember's monthly ***disposable*** retired pay.

Or

> **Important:** The attorney representing a servicemember who is retired but *not* accruing points or receiving retired pay will want to have the "retired pay" determined on the date of divorce rather than using a percentage of retired pay at retirement. In the latter formulation, the former spouse would receive the benefit of the cost-of-living increases that accrue from the date of the "retirement" or divorce to the date when the service-member begins receiving retired pay, usually at age sixty. (In 2009, Congress passed a law to allow reservists and guards-men who were recalled to and performed active duty on and after January 30, 2008, to be entitled to receive retired pay earlier than age sixty, at their election.)

> Use the following for a reservist servicemember who is retired and not accruing retirement points *but not* receiving retired pay at the time of divorce, that is, one who is no longer a drilling reservist but has not yet become entitled to receive retired pay.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of servicemember's retirement points earned during marriage *divided by* total number of servicemember's retirement points at divorce**] percent *multiplied by* [**0.025 *multiplied by* servicemember's total retirement points earned on date of divorce *divided by* 360**] percent *multiplied by* [**servicemember's high-36 month base pay at divorce**] *divided by* Servicemember's ***gross*** retired pay at retirement *multiplied by* Service-member's ***disposable*** retired pay at retirement.

Or

> Use the following when representing the former spouse of a reservist servicemember who is retired and not accruing retire-ment points *but not* receiving retired pay at the time of divorce.

IT IS THEREFORE ORDERED that Former Spouse have judgment against and recover from Servicemember [**percentage awarded former spouse (usually 50 percent)**] percent *multiplied by* [**percentage of community interest in servicemember's military retired pay entitlement on date of divorce, that is, number of servicemember's retirement points earned during marriage *divided by* total number of servicemember's retirement points at divorce**] percent *multiplied by* Servicemember's ***disposable*** retired pay at retirement.

> Select one of the following COLA provisions.

> Use the following if the former spouse is to receive COLAs.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the calculated percentage of Servicemember's disposable retired pay at retirement, together with all COLAs applicable thereto, payable IF, AS and WHEN received by Servicemember.

> Use the following if the former spouse is *not* to be awarded and receive COLAs.

IT IS FURTHER ORDERED that DFAS, to the extent allowed by law, pay Former Spouse each month the fixed dollar award out of Servicemember's disposable retired pay at retirement, payable IF, AS and WHEN received by Servicemember, but Former Spouse shall not be entitled to receive any COLAs related thereto.

> Continue with the following when representing the former spouse if the court will include this language, since it protects the interest being awarded to the former spouse from the effects of VA waiver and/or the servicemember's application for combat-related special compensation (CRSC) (10 U.S.C. § 1413a).

IT IS FURTHER ORDERED AND DECREED that the award herein shall in no event be less than [**number**] dollars ($[**amount**]) per month, together with all COLAs hereafter applicable thereto, of Servicemember's retired pay. The Court recognizes, in making this award, that DFAS, pursuant to the USFSPA, is authorized to pay Former Spouse only the herein-

awarded percentage of Servicemember's "disposable retired pay," and this Order, as to DFAS, should be so construed.

> Include the following if applicable.
>
> If the former spouse is to be awarded the right to receive the servicemember's Survivor Benefit Plan (SBP) annuity benefits, a decision must be made about who is to pay for it. If the former spouse is to pay the full cost of the SBP premiums, the simplest way to accomplish this result is to adjust the former spouse's percentage share of the disposable retired pay. The attorney who is not adequately informed on this issue should consult with someone who fully understands this aspect of retired pay calculation before reaching an agreement on this adjustment. If the former spouse's share is to be adjusted to provide for the former spouse's paying all of the cost of the monthly SBP premium, something like the following should be inserted at this point in the order unless the servicemember is already retired.

IT IS FURTHER ORDERED that the foregoing calculated percentage awarded Former Spouse shall further be reduced, as necessary, to provide for Former Spouse's payment of all of the monthly Survivor Benefit Plan premium cost.

> Continue with the following.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the USFSPA and Servicemember shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

If DFAS is not allowed to pay Former Spouse the full amount of Former Spouse's entitlement pursuant to this order for any reason, Servicemember is hereby ORDERED, within seven days of being notified by Former Spouse that Former Spouse is not receiving the full

amount of Former Spouse's interest in the retired pay, to execute and deliver to DFAS all forms or documents that may then be necessary to effect an allotment payable to Former Spouse in the amount of the difference between the amount being paid directly to Former Spouse by DFAS and the full amount of Former Spouse's interest in the retired pay. Servicemember is FURTHER ORDERED to keep and maintain in full force and effect any allotment required by this provision, payable to Former Spouse at [**address, city, state, zip code**], or such other address as Former Spouse may hereafter specify in writing, until such time as Former Spouse begins receiving Former Spouse's full separate-property share of Servicemember's disposable retired pay as awarded herein directly from DFAS. That allotment may be canceled by Servicemember if and when Former Spouse begins receiving, and for as long as Former Spouse is receiving, Former Spouse's full separate-property share of Servicemember's disposable retired pay directly from DFAS, but only in that event or to avoid double payment of sums.

> Include the following paragraph if applicable.

Since Former Spouse has been awarded the right to receive that share attributable to the interest awarded to Former Spouse herein of any and all COLAs or other increases in the monthly disposable retired pay hereinafter paid and if Former Spouse is not receiving from DFAS [her/his] full share of the retired pay herein awarded to Former Spouse, if and when COLAs are made to the retired pay received by Servicemember, Servicemember is hereby ORDERED to execute and deliver to DFAS all forms or documents that may then be necessary to effect an increase in the allotment to Former Spouse in the amount equal to the dollars-and-cents equivalent of that COLA attributable to Former Spouse's share of that disposable retired pay. Servicemember is hereby ORDERED to increase the allotment then in effect or, if applicable, initiate an allotment pursuant to the foregoing paragraph, within seven working days of the date Servicemember is notified by DFAS of the effective date of each COLA to the monthly retired pay payment.

*Constructive Trust*

IT IS FURTHER ORDERED that Servicemember be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Servicemember be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at [her/his] last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Servicemember. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Servicemember is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, and IT IS SO ORDERED. Servicemember is specifically directed that [he/she] is not relieved of that obligation except to the extent that [he/she] is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Servicemember shall not reduce the amount equal to the percentage of the retired pay or the amount of the retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Servicemember shall not merge [his/her] military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Servicemember's retired pay as awarded in this order, unless otherwise ordered herein.

*Death*

IT IS ORDERED that the payment of the retired pay awarded in this order to Former Spouse shall continue until the death of Servicemember or Former Spouse.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Servicemember shall deliver by first class mail to Former Spouse at [**former spouse's mailing address**], or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Servicemember from DFAS within five days of its receipt.

IT IS ORDERED that Servicemember hereby waives any privacy or other rights as may be required for Former Spouse to obtain information relating to Servicemember's date of retirement, last unit assignment, full pay grade, past or present monthly annuity payments, or other information that may be required to enforce this award or to revise this order to make it enforceable.

Include the following if applicable.

*Retirement*

IT IS ORDERED that Servicemember shall notify Former Spouse of [his/her] application for retired pay, and provide Former Spouse with a true copy of [his/her] Application for Retired Pay Benefits, on the date [he/she] applies for those benefits. This notification shall be mailed by Servicemember to Former Spouse at [her/his] last known address. Servicemember is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by [him/her] within five days of its receipt.

Continue with the following.

*Application for Direct Payment of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Servicemember's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-HGA-CL, Assistant General Counsel for Garnishment Operations, P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

> DD Form 2293 can be accessed and downloaded at **www .dtic.mil/whs/directives/infomgt/forms/eforms/dd2293.pdf**.

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in [her/his] gross income for [her/his] taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Servicemember shall not include such benefits in Servicemember's gross income for such taxable years.

*Survivor Benefit Plan*

**Important:** If being awarded, it is **mandatory** that the order state clearly that Survivor Benefit Plan (SBP) benefit coverage is being awarded to the former spouse, to the parties' children, or to both, as applicable.

Payment of the SBP monthly premiums is deducted from the gross retired pay by DFAS *before DFAS applies the former spouse percentage, that is, divides the retired pay between the former spouse and the servicemember*. If the attorney does not want the spouses to share in the cost and wants the former spouse to pay all of the cost of the SBP annuity, the premium should be deducted from the former spouse's share by reducing the percentage, or the former spouse can pay the servicemember each month (or other frequency period) for the coverage. Ensure that the former spouse pays only his or her share of the premium. For instance, if the former spouse is not receiving 50 percent of total retired pay, the former spouse will not be paying 50 percent of the premium, but will be paying only the percentage of the disposable pay that has been awarded to the former spouse. If the former spouse remarries before age fifty-five, his or her entitlement to be a SBP beneficiary is suspended for the duration of that marriage, but the former spouse can, on the termination of that marriage, petition DFAS for reinstatement of the suspended benefit. During the period of the suspended benefit, DFAS should, if timely notified, also suspend the payment of the monthly premiums.

A servicemember may designate only one class of beneficiary for the survivor benefits. Thus, if a former spouse beneficiary has been designated, a new spouse cannot be designated as a "spouse beneficiary" unless the former spouse is no longer an eligible beneficiary. Also, the servicemember is not permitted to award a fractional interest to the former spouse and leave a portion for a future spouse. DFAS will pay the survivor benefit to only the designated beneficiary(ies), i.e., spouse, spouse and children, former spouse or former spouse and children, on the death of the servicemember. Generally, the designation, once made, is irrevocable.

Select one of the following.

Use the following paragraph if the servicemember is retired, the spouse is currently designated as a spouse beneficiary of servicemember's SBP, and the spouse is to be redesignated as a former spouse beneficiary.

The Court further finds that Former Spouse is presently named a spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember's election to provide the Survivor Benefit Plan benefits to Former Spouse should be continued by

Former Spouse's being designated as a former spouse beneficiary and that Former Spouse's designation as a former spouse beneficiary should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during Former Spouse's lifetime, and IT IS SO ORDERED.

Or

> Use the following paragraph if the servicemember is *not* retired and the spouse is to be designated as a former spouse beneficiary of the SBP.

The Court further finds that Former Spouse should be designated as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate Former Spouse as a former spouse beneficiary of the Survivor Benefit Plan and that Former Spouse's designation as a former spouse beneficiary should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during Former Spouse's lifetime, and IT IS SO ORDERED.

Or

> If an election is made to have the parties' children covered as beneficiaries of the SBP, recognize that the coverage will continue only as long as one or more of the children are under the age of eighteen; the coverage can be continued until age twenty-one if the child(ren) are enrolled in college or another qualifying educational institution. If electing such a coverage, use the following as applicable.

The Court further finds that [the parties' child[ren]/Former Spouse and the parties' child[ren]] should be designated as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] of Servicemember's Armed Forces Survivor Benefit Plan (which is deemed to include the Reserve Component Survivor Benefit Plan, if applicable) and that Servicemember is ordered to designate [the parties' child[ren]/Former Spouse and the parties' child[ren]] as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] of

© STATE BAR OF TEXAS

the Survivor Benefit Plan and that the designation of [the child[ren]/Former Spouse and the child[ren]] as [a child beneficiary/child beneficiaries/former spouse and child beneficiaries] should not hereafter be modified, amended, withdrawn, reduced, or altered by Servicemember during the child[ren]'s eligibility [**include if applicable:** or Former Spouse's lifetime], and IT IS SO ORDERED.

> Or

> Although it is not necessary to specifically provide that there will be no SBP former spouse coverage for the former spouse since the failure to award the SBP benefit at the time of divorce is res judicata on the issue (*In re A.E.R.*, 2006 WL 349695 (Tex. App.—Fort Worth 2006) (mem. op.)), it is nevertheless recommended that the following paragraph be included to specifically address the benefit.

The Court further finds that Former Spouse should not be designated as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan, and IT IS SO ORDERED.

> Continue with the following if the survivor benefit is awarded.

IT IS THEREFORE ORDERED that Servicemember shall elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan. IT IS FURTHER ORDERED that, pursuant to this order, Former Spouse be and is hereby deemed designated, to the extent permitted by law, a former spouse beneficiary of Servicemember's Survivor Benefit Plan to receive

> Include one of the following.

the highest Survivor Benefit Plan entitlement allowed by law.

> Or

[**number**] dollars ($[**amount**]) per month.

> Or

the percentage equal to the percentage of Servicemember's disposable retired pay awarded Former Spouse in this order.

| Or |
| --- |

[**set out other formula for determination of share**].

| Continue with the following. |
| --- |

To the extent that Servicemember fails or otherwise refuses to cooperate in filing the documents required to elect to designate Former Spouse as a former spouse beneficiary of Servicemember's Survivor Benefit Plan, Former Spouse is directed to apply for Former Spouse's entitlement to be deemed a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan by notifying the DFAS Legal Department of this Court's deemed election pursuant to 10 U.S.C. § 1447 *et seq.*, completing a DD Form 2656-10 to effect the deemed election, and sending it, along with a certified copy of this order, to **U.S. Military Annuitant Pay, P.O. Box 7131, London, KY 40742-7131** by certified mail, return receipt requested. *Former Spouse's failure to register [her/his] deemed election within one year of the date this DRO is signed may, if not will, forever bar such an election for Former Spouse.*

IT IS ORDERED that Servicemember shall not during Former Spouse's lifetime modify, amend, withdraw, or in any other manner alter the election to name Former Spouse as a former spouse beneficiary of Servicemember's Armed Forces Survivor Benefit Plan.

DD Form 2656-1, the form for a servicemember to make a voluntary election for former spouse and/or child coverage, can be accessed and downloaded at **www.dtic.mil/whs/ directives/infomgt/forms/eforms/dd2656-1.pdf**.

DD Form 2656-10, the form for a former spouse to effect a deemed election for former spouse and/or child coverage, can be accessed and downloaded at **www.dtic.mil/whs/ directives/infomgt/forms/eforms/dd2656-10.pdf**.

One of these forms must be sent to DFAS at the London KY address, along with a certified copy of the decree of divorce and/or DRO, to register the former spouse as a former spouse beneficiary within one year of the date of the signing of the decree of divorce. Failure to do so within the one-year period will probably bar the former spouse from former spouse coverage.

*Medical and Commissary Benefits*

The following provision for medical and commissary benefits is applicable only under certain circumstances. See the practice notes at section 25.80.

The Court further finds that Former Spouse is entitled to receive medical and dental care under the terms of 10 U.S.C. section 1071 *et seq.* and to commissary and post exchange privileges to the same extent and on the same basis as a surviving spouse of a retired member of the United States Armed Forces following the date the Final Decree of Divorce is signed.

*Continued Jurisdiction and Clarification*

The following provision may be added if the parties were married for ten or more years during which the servicemember performed ten or more years of active/qualifying reserve duty. Otherwise, it should not be included in the order since DFAS will not, under current law, pay the former spouse's share of retired pay directly to her/him in those circumstances.

Although the Court and the parties intend that DFAS make direct payments to Former Spouse of Former Spouse's interest in the disposable retired pay awarded herein, IT IS FURTHER ORDERED that, if this order does not qualify for direct payment, Servicemember shall cooperate and do all things necessary to aid Former Spouse in obtaining a clarification of this order that will qualify for direct payment of Former Spouse's interest in the disposable retired

                    © STATE BAR OF TEXAS

pay awarded in this order. IT IS FURTHER ORDERED that this Court reserves jurisdiction to enter such a clarifying order.

Continue with the following.

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

SIGNED on _____.

_____
JUDGE PRESIDING